179 N.J. Super. 317 (1981)
431 A.2d 868
JAMES L. MARTIN, PLAINTIFF,
v.
EDUCATIONAL TESTING SERVICE, INC., DEFENDANT.
Superior Court of New Jersey, Chancery Division Mercer County.
Decided April 16, 1981.
*320 James L. Martin plaintiff, argued the motion pro se.
*321 William J. Brennan, III, argued the motion for defendant (Smith, Stratton, Wise & Heher, attorneys).
DREIER, J.S.C.
The parties to this action are before the court for rehearing of defendant's motion for summary judgment.[1]
Plaintiff, James L. Martin, is an applicant for a Pennsylvania real estate salesman's license.[2] After satisfying all the eligibility requirements and paying the examination fees, plaintiff twice sat for the required Real Estate Licensing Examinations (hereafter the "R.E.L.E."), on November 11, 1979 and January 12, 1980. The examinations, administered by defendant Educational Testing Service, Inc. (hereafter "ETS") of Princeton, New Jersey, consisted of a uniform test, administered in all jurisdictions using the R.E.L.E., and a state test, developed in close cooperation with Pennsylvania and reflecting that state's particular real estate law and practice.[3] Both consist of objective, multiple-choice questions. Passing score, established by Pennsylvania, is 75, and a successful candidate for licensure must pass both parts of the examination. Plaintiff passed the uniform portion, but failed the state test twice, first scoring 67 in November 1979 and then 74 in January 1980.
Plaintiff thereafter made oral and written requests to ETS both to regrade his second examination and to send him copies of the state test. ETS informed plaintiff that under the signed *322 "agreement" between the parties[4] it was under no obligation to provide plaintiff with the requested information. ETS did regrade plaintiff's second examination by hand and found no grading error.
On May 12, 1980 plaintiff filed a pro se complaint against ETS (1) alleging that ETS wrongfully scored his examination[4a] and (2) requesting copies of the November 10, 1979 and January 12, 1980 examination, as well as plaintiff's and ETS' answers to both examinations for study purposes. Although not stated specifically, it appears from the pleadings that pursuant to the allegation of wrongful scoring plaintiff is requesting this court to rescore his examination and declare that he has passed all requirements for licensure should it be proven that a mistake was made which brought his score below passing level.[5]
*323 ETS has, among other things, answered that plaintiff's action is barred by the doctrines of waiver and estoppel in that he entered into the alleged "written contract" with ETS (the Bulletin of Information) which, as noted earlier, provided that a failing applicant had no right to review the test results. At the initial hearing ETS further argued that the documents sought were protected under the copyright laws, were confidential and constituted trade secrets.[6] Relying on these defenses, ETS moved for summary judgment on both of plaintiff's claims.
Plaintiff, in opposition to the motion for summary judgment, contends that he is unable to prove that ETS wrongfully graded his examination because the examination and answers are in the exclusive possession and control of ETS.

I
In deciding the issues in this case, it is first necessary to point out that plaintiff claims two distinct rights: (1) the substantive right to have his test graded accurately and (2) the procedural right to discovery as a means of ascertaining any violation of the substantive right. In the absence of a substantive right deserving of judicial protection, the granting of a procedural right would be meaningless.

A
In Brotspies v. Civil Service Dep't, N.J., 66 N.J. Super. 492 (App.Div. 1961), applicants for a New Jersey Civil Service position challenged, among other matters, the grading of particular questions on an objective, multiple-choice promotional examination, *324 alleging that the answers considered correct by the Department were, in fact, incorrect. On that issue the court said:
We have carefully reviewed the questions and answers considered correct by the respondent Department, as well as those claimed to be correct by plaintiffs' consensus. We perceive no reason for judicial intervention ... The answers considered correct by [respondent] ... have not been shown to be unreasonable or implausible. We are persuaded that respondent exercised a reasonable administrative judgment in finding its answers more appropriate than those for which plaintiffs contend. [at 498-499]
Although not directly addressed, it is implicit in the court's holding that had the answers been clearly incorrect there would be cause for judicial intervention. By clear implication, plaintiffs had a right to be accurately tested. This conclusion is inescapable on an examination of our law regarding due process.
The United States Supreme Court has held that all examinations designed to test the competence of one seeking a particular position or entry into an occupation or profession must be conducted in a manner which comports with due process. Schware v. Bd. of Examiners, 353 U.S. 232, 238-39, 77 S.Ct. 752, 755-56, 1 L.Ed.2d 796 (1957). It is, of course, elementary that action by the State which is arbitrary and capricious does not comport with due process.[7]Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), reh. den. 351 U.S. 944, 76 S.Ct. 843, 100 L.Ed. 1470 (1956); Robson v. Rodriquez, 26 N.J. 517, 522 (1958); State v. Krol, 68 N.J. 236 (1975).
In Zicherman v. Civil Service Dep't, 40 N.J. 347, 351 (1963), our Supreme Court indicated that it would uphold the validity of the form and content of an examination where "there *325 is any fair argument in support of the course taken [by the examiners.]" See, also Flanagan v. Civil Service Dep't, 29 N.J. 1, 12 (1959); Kelly v. Civil Service Comm'n, 37 N.J. 450, 460 (1962); Artaserse v. Civil Service Dep't, 37 N.J. Super. 98 (App. Div. 1955). Certainly, New Jersey places a heavy burden on one challenging the validity of an examination, but demands a fair argument, i.e., will not uphold an arbitrary and capricious action.
ETS relies on cases which found, among other things, no due process right to examinee review of the grading of bar examination questions. These cases are distinguishable on the nature of the examination alone. In Tyler v. Vickery, 517 F.2d 1089 (5 Cir.1975), and Whitfield v. Illinois Bd. of Law Examiners, 504 F.2d 474 (7 Cir.1974), applicants to the state bar challenged the correctness of subjective grading of essay examinations. In deciding that the type of review sought by plaintiffs was not necessary to due process, both courts stressed the subjective nature of the examinations involved. The courts indicated that correctness was elusive and that the burden on examiners of having to defend their evaluations of questions was great. Whitfield at 478; Tyler at 1102, 1105.[8]
In the context before this court no subjective element enters as to the grader's evaluation of the R.E.L.E. (as opposed to the formulation of the question). As a correlative, there is a less onerous burden on the formulater of objective questions to substantiate his answers, as opposed to that of the essay examiner in substantiating a grade based upon an infinite number of possible responses. Where plaintiff could readily be shown that *326 he was either correct or incorrect in his answer, to fail him for a correct answer would be arbitrary and capricious.
In Bruno v. Kern, 174 Misc. 958, 22 N.Y.S.2d 272 (Sup.Ct. 1940), 17 applicants for position in the New York City Civil Service petitioned the Supreme Court to correct the grading of one question on a multiple-choice promotion examination, which examination each had failed by one point. After reviewing the unanimous reports of experts that the question was indeed incorrectly graded, the court granted the petition, stating:
Where the Commission marks as incorrect an answer which is clearly and undoubtedly correct, its action in so doing cannot but be regarded as arbitrary, whimsical or capricious; and as such it is subject to judicial review. [22 N.Y.S.2d at 279]
This court thus finds that plaintiff has a substantive right to be tested fairly and accurately, i.e., to see that the examinations are graded properly and that the ETS grading key is correct.

B
Proceeding from this decision, this court next must determine whether plaintiff has a procedural right to discovery in this matter.
Plaintiff claims that without some form of inspection of the requested documents, he cannot protect his substantive right, and defendant's ex parte assurances that its examination and grading practices are correct are not enough.
Where a party, opposing a motion for summary judgment, is unable to file supporting affidavits because the critical facts are peculiarly within the moving party's knowledge, the motion should be denied until the opposing party has had an opportunity to complete discovery. Bilotti v. Accurate Forming Corp., 39 N.J. 184, 206 (1963); R. 4:46-5(a). This principle has been applied to discovery issues related to the grading of state administered examinations. In Parrish v. Alabama State Bar Bd. of Commr's, 533 F.2d 942 (5 Cir.1976), a black lawyers association and eight individual plaintiffs brought a class action against the Board, claiming discriminatory policies *327 and practices governing admission to the Alabama Bar. The court held that the trial court erred in not requiring production of the bar examination essays and grader's notes, as requested by plaintiffs, before passing on the motion for summary judgment.
Of course, the whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits. We conclude that the granting of the motion for summary judgment by the trial court without requiring the production of the documents requested deprived the appellants of an opportunity to develop the facts on which they sought to create a fact issue before the trial court. [553 F.2d at 948][9]
Although plaintiff did not make a formal motion for inspection and production of documents under R. 4:18-1, the rules of discovery are to be liberally construed and the broadest possible latitude should be accorded them. Blumberg v. Dornbusch, 139 N.J. Super. 433 (App.Div. 1976); Myers v. St. Francis Hosp., 91 N.J. Super. 377 (App.Div. 1966). This court notes that plaintiff, although a law student in Pennsylvania, is unfamiliar with the technical requirements of our rules, and will treat plaintiff's complaint and papers filed in opposition to defendant's motion as such a request.
Inspection orders under R. 4:18-1 will issue upon proof that the desired inspection of documents is relevant to the subject matter of the pending action and would aid plaintiff in the preparation of his case or otherwise facilitate proof or progress at trial. Lakewood Trust Co. v. Fidelity & Deposit Co. of Maryland, 81 N.J. Super. 329 (Law Div. 1963). As noted earlier, ETS resists this demand for inspection on the basis that the requested documents are trade secrets, confidential and protected by the laws of copyright. But, as noted in Lakewood, 81 N.J. Super. at 341, documents, even though confidential, may be inspected if the inspecting party satisfies the court that the *328 documents are material and relevant to the action and the ends of justice are served by the inspection. The court further held there that internal reports and records, even if rendered confidential by statute, would still be subject to discovery if they were relevant or would lead to the discovery of other material evidence. See, also, Gureghian v. Hackensack Hosp., 109 N.J. Super. 143, 148 (Law Div. 1970); Bzozowski v. Pennsylvania-Reading Seashore Lines, 107 N.J. Super. 467, 474 (Law Div. 1969), and Monaco v. Pepperidge Farms, Inc., 94 N.J. Super. 39, 42 (Ch.Div. 1967).
Insofar as defendant also needs protection against disclosure, this dispute is not novel. In Bead Chain Mfg. Co. v. Smith, 1 N.J. 118 (1948), defendant argued that an order to inspect would result in the disclosure to plaintiff of its secrets and confidential working practices. Chief Justice Vanderbilt announced for an unanimous court:
It is urged by the defendants that the allowance of an order to inspect will result in the disclosure to the plaintiff of the secrets and confidential working practices used in the manufacturing operations of defendant corporation. This argument overlooks the policy of the statute under which this application is made as well as the present express authority contained in the rules empowering the trial court to make such orders as will reasonably and appropriately safeguard the rights of the defendants, Rule 3:30-2. [now R. 4:10-3] The presentation of the truth to the court is paramount; it must proceed unimpeded and unhampered despite claims of prying, where, as here, there exists the means of affording adequate protection against unwarranted intrusion and invasion of the rights of one party by another party. [at 120-121]
See, also, Sunbeam Corp. v. Windsor Fifth Ave., Inc., 14 N.J. 222, 240 (1953). However, this does not imply that plaintiff's right to inspect is unlimited; there must be ultimate boundaries in both construction of the rule and execution of the order. Eilen v. Tappin's Inc., 14 N.J. Super. 162, 165-166 (App.Div. 1951).
R. 4:10-3 provides:
Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including, but not limited to, one or more of the following:
........

*329 (g) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
........
Under this rule a court has discretion to take whatever steps are necessary to protect defendant's confidential documents, while still permitting plaintiff the right to discovery.[10]
On initial hearing plaintiff was given the right at his own expense to hire an expert to inspect those questions on his second examination where plaintiff's answers were marked incorrect. This inspection was to take place under strict protective order to assure confidentiality. The court further decided that should the parties be unable to agree upon such an expert, then the court would make a selection from a list of experts submitted to it by the parties, or designate its own expert.[11] At rehearing it was disclosed by plaintiff that he has chosen an expert who is a Pennsylvania resident. Defendant does not dispute the expert's qualifications but protests that because the expert is a Pennsylvania citizen this court will have great practical difficulty in enforcing its protective order.
Defendant's contention has merit. Though plaintiff has a substantive right to be tested accurately and a procedural right to discovery for the defense of the substantive right, defendant's right to confidentiality must be protected but cannot fully be satisfied under these circumstances. Defendant would be adequately protected only by an order emanating from a Pennsylvania court. Plaintiff, on the other hand, is not confined to the courts of New Jersey for the assertion of the rights we have here declared. He can assert these rights in Pennsylvania.
*330 Weighing these factors, this court decides today, on rehearing, to invoke the doctrine of forum non conveniens. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); Gore v. United States Corp., 15 N.J. 301, 305 (1954); Starr v. Berry, 25 N.J. 573, 584 (1958). Civic Southern Factors v. Bonat, 65 N.J. 329, 333 (1974). Accordingly, this court will dismiss plaintiff's action, giving him leave to reinstitute it here should Pennsylvania refuse him a forum.[12]

II
Concerning ETS's contention that plaintiff is barred from demanding copies of the examination by the doctrines of estoppel and waiver, it is true that the Bulletin of Information which accompanied the written application contained a provision denying applicants the right of inspection. As to the issue of waiver, however, there is no allegation that the provision in the Bulletin of Information was called to plaintiff's attention or that he intentionally relinquished a known right. East Orange v. Board of Water Comm'rs, 41 N.J. 6, 17 (1963). Also defendant has shown no facts from which plaintiff can be shown to be estopped from questioning the accuracy of his grade.
Insofar as the Bulletin may be incorporated into the "contract," and plaintiff thus contractually be precluded from determining the accuracy of the grading, this court must determine the enforceability of such provision. Although courts continue to recognize that parties should not be unnecessarily restricted in their freedom to contract, there is an increasing willingness to invalidate unconscionable contractual provisions which clearly tend to injure the public in some way. Cf. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960); Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 554 (1967). A *331 contract provision otherwise valid may be declared invalid where a relationship exists in which the parties have unequal bargaining power, and one of them is compelled to accept what is offered or be deprived of the advantages of a needed relationship. Henningsen, supra; Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 585 (App.Div. 1954); Moreira Constr. Co., Inc. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App.Div. 1967); aff'd o.b. 51 N.J. 405 (1968); Monsanto Co. v. Alden Leeds, Inc., 130 N.J. Super. 245, 261 (Law Div. 1974). Such a contract of adhesion must at very least be closely scrutinized by the court to determine its reasonableness. Under Pennsylvania law plaintiff can become a licensed real estate salesman only by passing the R.E.L.E., which is administered by ETS. Plaintiff had no choice but to agree to the terms offered by ETS if he wished to sit for that examination. No alternative was available. ETS' "contractual" provision attempting to deny plaintiff the right to verify his results is unreasonable. Cf. Parrish v. Alabama State Bar Bd. of Com'rs, supra.

III
ETS' motion for summary judgment as to plaintiff's request for the examination questions and answers for the purpose of future study stands on a different footing. The motion was granted on initial hearing, and that decision remains undisturbed today. The purpose of Pennsylvania's examination requirement is to determine plaintiff's knowledge of real estate law, not his ability to pass ETS' examination. To this end, an applicant studies real estate law and practice, construction, and other related subjects  not particular examination questions and answers. To accede to plaintiff's request would be to force ETS to become plaintiff's uncompensated instructor and would effectively terminate ETS' protection of its examination as a trade secret. Nothing presented by plaintiff supports such a claim.
NOTES
[1] Defendant's motion was argued first on January 9, 1981, and reargued March 27, 1981 at defendant's request.
[2] On the date of first hearing plaintiff was a resident of Pennsylvania. At the time of rehearing he has become a resident of Delaware.
[3] On this rehearing defendants present the affidavit of John Donnelly, chairman of the Pennsylvania State Real Estate Commission, which asserts that the Commission provides ETS with specifications which ETS uses in developing questions. The Commission then reviews these questions for form and content. No question is used unless the Commission determines it accurately reflects Pennsylvania law.
[4] This "agreement" was nothing more than an application to take the test and contained no specific reference to this issue. The Bulletin of Information issued by defendant, however, contained the following language:

All Real Estate Licensing Examinations are confidential tests, designed and administered under conditions established to maintain and protect their security. Neither the current forms nor previous forms of the tests are available for inspection or purchase. [page 2]
........
REVIEWING TEST RESULTS
There are no provisions for either failing or passing applicants to review their test results with persons from ETS or the licensing agencies. This policy is necessary due to the large numbers of applicants taking the examinations and the need to protect test security. However, it should be noted that ETS recognizes the extreme importance of the test results to potential licensees and takes many precautions to avoid scoring errors. [Page 6]
[4a] This allegation was gleaned from the general import of the complaint and from the interrogatories.
[5] ETS vigorously asserts that because of this implicit request, vital interests of the Commonwealth of Pennsylvania are here involved and the Commonwealth is therefore a necessary party. ETS further asserts that without joinder of the Commonwealth, complete relief cannot be granted, and for that reason, too, the Commonwealth is a necessary party. For reasons which will become clear below, it is not yet necessary to address this issue. Should the court later reach that issue and should it determine that the Commonwealth is a necessary party, the court perceives no jurisdictional barrier to its joinder. Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), reh. den. 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979). But cf. Liquid Carbonic Corp. v. New York City, 150 N.J. Super. 119 (App.Div. 1977), certif. den. 75 N.J. 522 (1977), decided before Nevada v. Hall.
[6] Plaintiff stated that he intends to offer no proof in opposition to this claim.
[7] The tests in question were scored by ETS, a private corporation, and a due process right cannot be violated by a private party. United States v. Price, 383 U.S. 787, 799, 86 S.Ct. 1152, 1159, 16 L.Ed.2d 267 (1966). However, by its own assertion, ETS was here acting as an agent of the Commonwealth of Pennsylvania. If it failed plaintiff for a correct answer, its action would be state action for purposes of due process analysis. State v. Bd. of Public Instruction of Duval County, 189 So.2d 161 (Fla.Sup.Ct. 1966).
[8] See, also, Singleton v. Louisiana State Bar Ass'n, 413 F. Supp. 1092, 1100 (E.D.La. 1976); In re Mead, 372 Mass. 253, 361 N.E.2d 403, 405 (1976), cert. den. 434 U.S. 858, 98 S.Ct. 182, 54 L.Ed.2d 131 (1977). But cf. Richardson v. McFadden, 540 F.2d 744, 751 (4 Cir.1976), allowing review of essay questions and finding arbitrary and capricious grading as two litigants. See, also, Application of Peterson for Admission to the Alaska Bar Ass'n, 459 P.2d 703 (Alaska 1969).
[9] See, also, Application of Peterson for Admission to the Alaska Bar Ass'n, supra at 711.
[10] It is to be noted that in the New Jersey Civil Service case, Brotspies, supra, respondent raised argument regarding the need to keep questions and answers confidential, yet the court ordered the material made available for in camera inspection.
[11] As to a court's power to appoint an impartial expert, see N.A.A.C.P. of So. Burlington Cty. v. Mt. Laurel Tp., 67 N.J. 151, 216 (1975  concurring opinion); see, also, Service Liquor Distr. v. Calvert Distillers Corp., 16 F.R.D. 513 (S.D.N.Y. 1955).
[12] Because of our decision on this issue we do not today reach the questions of whether the Commonwealth of Pennsylvania is an indispensible party to such further proceedings should they take place before this court. See fn. 5, supra.