227 N.J. Super. 69 (1988)
545 A.2d 807
JOHN J. FINN AND MARGARET M. FINN, PLAINTIFFS-APPELLANTS,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF NORWOOD, JOHN GUERCIO, INDIVIDUALLY AND AS TAX ASSESSOR OF THE BOROUGH OF NORWOOD, AND THE BOARD OF ADJUSTMENT OF THE BOROUGH OF NORWOOD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1988.
Decided August 3, 1988.
*70 Before Judges KING, GRUCCIO and D'ANNUNZIO.
Michael J. Sprague argued the cause for appellants (Hoffman, Wertalik & Sprague, attorneys).
Lorraine Teleky-Petrella, argued the cause for respondent John Guercio.
Michael A. Cerone, Jr. argued the cause for respondent Mayor and Council of the Borough of Norwood (Francis J. DeVito, attorney).
*71 Bruce S. Koppel, argued the cause for respondent Board of Adjustment of the Borough of Norwood.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Plaintiffs, residents of the Borough of Norwood (Borough), challenged an exchange of lands between the Borough and defendant, John Guercio, the Borough's tax assessor, and also challenged a frontage variance granted to one of the lots involved in the exchange. Plaintiffs now appeal an adverse judgment of the Law Division.
In 1985, the Borough owned a lot on High Street with dimensions of 60 feet by 200 feet and a lot on Seymour Street with dimensions of 100 feet by 105 feet. We shall refer to these lots as the Borough lots. The Borough also owned parcels of land in an area of Norwood known as Fox Hill. The record does not adequately define the extent of the Borough's Fox Hill holdings.
In 1985, Guercio was the Borough's tax assessor and had held that position since 1977. Guercio, motivated by a desire to provide his son with a building lot in the Borough, located certain privately owned lots in Fox Hill which he concluded might be available to purchase. Guercio's purpose in acquiring these Fox Hill lots was to use them in a swap with the municipality to acquire the High Street and Seymour Street lots. Accordingly, Guercio contacted Ms. Stiven and Mr. Harvey, the owners of the Fox Hill lots which had caught his attention.
Guercio negotiated deals with Stiven and Harvey pursuant to which Guercio could acquire the Fox Hill lots contingent on an exchange of these lots for the Borough lots. The Stiven lot was 25 feet by 100 feet and was to be acquired for $1,000. Six of the Harvey lots were 25 feet by 100 feet. The seventh Harvey lot was 44 feet by 100 feet. All seven Harvey lots were to be acquired for $3,000.
*72 Guercio's contracts with Harvey and Stiven were dated in August 1985.
Guercio testified that in the summer of 1985 he approached the Borough governing body in a "work session." Apparently there are no minutes of "work sessions." According to Guercio, he proposed to the governing body that he would acquire the Stiven and Harvey lots and exchange them for the Borough lots on High Street and Seymour Street. It is not clear from the record whether Guercio's proposal to the governing body was made before or after he had placed the Stiven and Harvey lots under contract.
The governing body expressed an interest in the exchange and retained, at Guercio's expense, Sheehan Associates to perform an appraisal. Guercio also retained William Stack to appraise the properties.
In December 1985, the Borough adopted an ordinance authorizing the exchange. The ordinance recited that the Borough's appraiser, Sheehan Associates determined that the Guercio lots had a value of $63,400 and that the Borough lots were worth $80,700, for a difference of $17,300. The ordinance also recited that Guercio's appraiser, Stack and Stack, established that Guercio's lots had a value of $31,700 and that the Borough's lot had a value of $50,425, for a difference of $18,725. The ordinance stated that the parties had agreed on a compromise, that the lots would be exchanged and that in addition Guercio would pay $18,000 to the Borough.
On December 5, 1985, the Borough's Board of Adjustment granted a variance to the High Street lot which allowed the construction of a residence on that lot despite the fact that its 60 feet of frontage was 15 feet less than the frontage required in the zoning ordinance.
Thereafter, plaintiffs commenced this action in the Law Division. At the trial, William Stack testified as to his appraisal of the properties. Plaintiffs' appraiser, Mason, testified that the High Street lot was worth $65,000 and that the Seymour Street *73 property was worth $40,000, for a total of $105,000, slightly more than double Stack's appraisal. Mason appraised the eight Guercio Fox Hill lots at $16,000, approximately half of Stack's appraisal. The other witnesses were plaintiff, John Finn, Guercio and Johnathan Netts, a borough councilman.
At the conclusion of the trial, the trial judge made the following findings and rulings as to plaintiffs' challenge of the exchange:
THE COURT: I find that the Borough had a right to sell the land or to enter into a swap deal and entering into a swap deal I find that there was no impropriety.
I find that there was no conflict of interest because this defendant Guercio divested himself of any power as a tax assessor. All knew that he was asking for a swap situation. I was particularly impressed with Councilman Netts' testimony who said that after comparing the merits of the situation he found that the swap was beneficial to the Borough as well as to the individual and I consider him an individual in this transaction. I find no conflict of interest.
As to the value of property, I was not impressed by either of the appraisers. No matter how they tried to come about to a fair evaluation I think they were lacking. I find that the plaintiff has failed the burden of proof required and will enter a judgment against the plaintiff and in favor of the defendant Guercio.
You'll submit your order for judgment.
For the reasons hereinafter expressed, we reverse and remand to the Law Division for further proceedings.
N.J.S.A. 40A:12-16 authorizes a municipality to exchange lands "for other lands or rights or interests therein desired for public use." In acquiring lands for exchange, a municipality may also "exact and receive a cash consideration in addition to" the lands received in an exchange. The value of the lands to be conveyed to the municipality and any cash consideration to be paid must, at least, be equal to the value of the lands to be conveyed by the municipality. Consequently, in reviewing the Borough's action, the trial court was required to make findings regarding the relative values of the exchanged lands. The trial court made no such findings. Instead, the trial court merely concluded that plaintiffs had failed to carry *74 their burden of proof because the trial court "was not impressed by either of the appraisers."
We have several problems with the trial court's approach. The trial court did not explain why neither appraisers' testimony was persuasive. In adopting the ordinance authorizing the exchange, the Borough relied on the opinion of Stack, the appraisal witness whose testimony and appraisal the court determined was unimpressive. Finally, there was no discussion or consideration by the court of how property which Guercio was able to place under contract in August 1985 for $4,000 attained a value of $31,000 four months later, an increase of almost 800%. Although there was some testimony from Guercio as to title problems which he or his lawyers allegedly solved, his testimony concerning these title problems was vague and would not be the basis for a finding that his efforts had added value to the Fox Hill lots. The record also supports an inference that Guercio was required to pay back taxes on the Fox Hill lots. However, the record is inadequate to establish with accuracy the amount of money involved.
On remand, the trial court will analyze the appraisal testimony of Mason and Stack and make findings as to the value of the properties based on their testimony and appraisals. If the trial judge concludes that their appraisals are unpersuasive, the judge should give us his reasons for that conclusion. On remand, the parties shall be given leave, with an appropriate opportunity for discovery, to supplement their evidence as to relative values. We call to the trial court's attention its inherent authority to appoint an independent expert. Twp. of Wayne v. Kosoff, 73 N.J. 8 (1977); State v. Lanza, 74 N.J. Super. 362, 374 (App.Div. 1962), aff'd 39 N.J. 595 (1963), cert. den. 375 U.S. 451, 84 S.Ct. 525, 11 L.Ed.2d 477 (1964), reh. den. 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964).
We also bring to the attention of the parties and the court the requirement in N.J.S.A. 40A:12-16 that municipal land to be exchanged "shall be valued at not less than the amount for *75 which it was acquired or in the case of an acquisition by gift or devise in an amount of not less than the `full and fair value' of the land ... as determined by the assessor of the municipality in which it is located pursuant to R.S. 54:4-23 for the tax year in which the land was acquired by the county or the municipality." The record is silent as to how and when the Borough lots were acquired, consequently it cannot be determined whether this element of the statute had been satisfied. The statute also requires that the lands to be conveyed to the municipality "shall be valued at no more than the `full and fair value' determined for the land ... by the assessor ... pursuant to R.S. 54:4-23 for the then current tax year." The record is silent as to the assessed value of Guercio's Fox Hill lots in 1985. In May 1987, when this case was tried, Guercio testified only as to the "current" assessed value of the Fox Hill lots.[1]
We choose not to address at this time plaintiffs' contentions that the exchange involved a conflict of interest and, therefore, may not be consummated. The conflict issue may become moot if the trial court determines that N.J.S.A. 40A:12-16 has not been complied with for any of the reasons discussed above, or that the municipal action was otherwise arbitrary, unreasonable or ultra vires. However, if the trial court reaches the conflict issue, it should give us the benefit of its analysis of that issue, including the impact, if any, of the Borough's code of ethics.[2]
In analyzing the conflict of interest issue, if it reaches that issue, the trial court should consider the similarity between Guercio's actions and those of a corporate officer in the private *76 sector charged with usurping a corporate opportunity. Cf. Valle v. North Jersey Automobile Club, 141 N.J. Super. 568 (App.Div. 1976), mod. 74 N.J. 109 (1977); Solimine v. Hollander, 128 N.J. Eq. 228, 246-247 (Ch. 1940); Guth v. Loft, 23 Del. Ch. 255, 5 A.2d 503 (Sup.Ct. 1939); Borden v. Sinskey, 530 F.2d 478 (3rd Cir.1976); Three G Corp. v. Daddis, 714 P.2d 1333 (Colo. App. 1986); 3 Fletcher, Cyclopedia of the Law of Private Corporations, Section 861.1 (1986); Fairness to Corporation Where Corporate Opportunity is Allegedly Usurped by Officer or Director, 17 A.L.R.4th 479 (1982).
There was testimony by councilman Netts that the land use element of the Borough's master plan recommended that the Borough acquire privately owned lots in the Fox Hill section to add them to Borough owned lands in Fox Hill. Netts testified that there were "[a] number of very small isolated lots throughout the Borough that have been a structure [sic] impediment to the municipality's utilization of its own land in that area, and the implication here is that as these maintain or retain private ownership, they prevent the Borough from properly utilizing its own land."[3] Guercio testified that he acquired contract rights in the Fox Hill lots because he wanted to use them to swap for other municipal lands, therefore, it can be inferred that Guercio was aware of some interest or potential interest of the municipality in acquiring privately owned Fox Hill lots.
Evidently, Guercio's assessment of the situation was correct. The ordinance authorizing the exchange recites that Guercio's Fox Hill lots "are either adjacent to or surrounded by municipally-owned property and, if they came into the possession of the Borough, would help the Borough do away with small spot lots that are contiguous with larger Borough owned pieces and would help consolidate the ownership of larger tracts of property into the Borough...." Similarly, paragraph nine of the ordinance states that "[t]he acquisition of the Guercio lots is *77 more advantageous to the municipality for public use than the lands to be conveyed by the municipality because it consolidates larger tract ownership into the Borough without the Borough incurring the significant expenses of foreclosure or condemnation...."
The fact that Guercio was able to put the Fox Hill lots under contract suggests that the Borough may have been able to acquire those lots by negotiation with the owners rather than through foreclosure or condemnation. Obviously, the Borough had a substantial interest in acquiring the Fox Hill lots since it was willing to give up its High Street and Seymour Street property which, according to its appraisers, had a value of between $50,000 and $80,000. On remand, the parties should develop in as much detail as possible (1) the facts and circumstances surrounding Guercio's identification of the Stiven and Harvey lots as tracts in which the Borough would be interested and (2) discussions among Guercio and members of the governing body which led to the understanding which eventually blossomed into the exchange ordinance. The trial court must then consider whether Guercio had a fiduciary duty to pass along to the Borough the opportunity to acquire the Stiven and Harvey lots for the nominal consideration of $4,000.
Plaintiffs' contention that the Borough was required to offer the High Street and Seymour Street lots to the owners of contiguous real property pursuant to N.J.S.A. 40A:12-13.2 is without merit. That statute provides:
Notwithstanding any provision of law to the contrary, whenever any municipality intends to sell real property which is less than the minimum size required for development under the municipal zoning ordinance and is without any capital improvements thereon, it shall accord the owner or owners of any real property contiguous to such real property the right to prior refusal to purchase such land.
By its terms the statute applies only when a municipality intends to dispose of property by a sale. N.J.S.A. 40A:12-2(i) defines a sale as not including "any lease or exchange of such property." Moreover, an exchange under N.J.S.A. 40A:12-16 *78 requires the existence of lands which would be advantageous for the municipality to acquire. Consequently, the only person with whom the municipality can deal is the owner of the lands which the municipality wants to acquire. Offering municipal lands to contiguous owners defeats the rationale of an exchange. Cf. Englander v. West Orange Tp., 224 N.J. Super. 182, 190 (App.Div. 1988).
Plaintiffs also challenged the grant of a frontage variance to the High Street Lot. As to that challenge, the trial court ruled:
All right, as to the counterclaim that the Board of Adjustment was unreasonable, capricious and arbitrary in their decision, I find as a matter of fact that they were not and, therefore, will enter a judgment in favor of the Board of Adjustment against the plaintiff.
On remand, the trial court shall give us the benefit of his analysis of the record before the Board of Adjustment to support his conclusion that the board had not acted arbitrarily or unreasonably and the court shall explain its reasons for rejecting plaintiffs' contentions that the variance grant was otherwise invalid.
Reversed and remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] In 1971 the Legislature enacted a substantial revision of the statutes authorizing sales and exchanges of municipal lands. L. 1971, c. 199. This revision introduced the value parameters discussed immediately preceding this footnote. Fraser v. Teaneck Tp., 1 N.J. 503 (1949) and Bruno v. City of Long Branch, 35 N.J. Super. 304 (App.Div. 1955), aff'd. 21 N.J. 68 (1956) were decided prior to the revision. See generally Annotation, "Power of Municipal Corporation to Exchange its Real Property", 60 A.L.R.2d 220 (1958).
[2] Borough of Norwood ordinances, section 8-9.1 et seq.
[3] Transcript May 26, 1987, page 104, line 3 to line 9.