19 A.3d 966

O BUILDERS & ASSOCIATES, INC., PLAINTIFF–RESPONDENT,
v. YUNA CORPORATION OF NJ, A/K/A BADEN BADEN
RESTAURANT, DEFENDANT–APPELLANT.

Argued March 29, 2011—Decided May 25, 2011.

*Michael S. Kimm* argued the cause for appellant (*Kimm Law Firm,* attorneys; *Mr. Kimm* and *Francis Liu,* on the briefs).

*Peter Y. Lee* argued the cause for respondent.

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal requires that we consider, as a matter of first impression, the scope and application of *RPC* 1.18. That *Rule of Professional Conduct* was adopted in 2004 in order to "clarify a lawyer's obligations arising from preliminary consultations with a prospective client[,]" and it "allows that preliminary consultations may not result in a lawyer-client relationship, but nevertheless may in certain circumstances preclude the lawyer from accepting some subsequent representations adverse to the prospective client." Kevin H. Michels, *New Jersey Attorney Ethics—The Law Of New Jersey Lawyering* § 13.6 at 261 (2011).

In this appeal, an attorney met with a then-prospective client;[1] although both agree that they discussed whether the lawyer would

[1] For consistency and clarity, we apply the defined terms of "prospective client" and "former prospective client" set forth in *RPC* 1.18(d): "A person who

assume the representation of the client in respect of one specific pending case, their accounts of what else was discussed vary considerably. In any event, the attorney did not undertake that or any other representation on behalf of the now former prospective client. Some time later, and on behalf of a different client, the lawyer filed suit against a corporate entity wholly owned by the former prospective client. Alleging that the lawyer had become privy to confidential information during the earlier consultation, the entity owned by the former prospective client moved to disqualify the lawyer.

*RPC* 1.18 seeks to strike a delicate balance between a client's right to protect communications made in the context of a consultation precedent to the actual retention of a lawyer, and the lawyer's right to be free to represent clients without being unduly restricted by the yoke of short-lived consultations that do not ripen into an attorney-client relationship. It therefore recognizes, as a general rule, that "[a] lawyer who has had discussions in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues," save as otherwise permitted under the *RPC's* governing communications from former clients. *RPC* 1.18(a). Even assuming its application, however, the tension created by that general rule is relieved in part by a significant limitation on its reach: a lawyer who has consulted with a former prospective client "shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter[.]" *RPC* 1.18(b).

Thus, in the context of an application to disqualify a lawyer based on a consultation with a former prospective client, two

---

discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a 'prospective client,' and if no client-lawyer relationship is formed, is a 'former prospective client.' "

factors must coalesce: the matter of the consultation and the matter then adverse must be "the same or [ ] substantially related," and the information the lawyer received during the consultation must be "significantly harmful" to the former prospective client in the current adverse matter. Moreover, as with all applications for the disqualification of counsel, the initial burden of going forward or of production—that is, that the two matters are the same or substantially related and that the information imparted in the consultation is significantly harmful to the former prospective client—rests on the party seeking disqualification. If that burden is satisfied, the lawyer for whom disqualification is sought may seek to rebut those allegations. In the end, however, the burden of persuasion and proof remains on the party seeking disqualification. We also reaffirm strongly the preference that applications seeking attorney disqualification be presented in writing, and that disqualification decisions should be made on the papers presented, except, of course, when an evidentiary hearing is needed because the court is unable to determine the matter on the written record before it.

## I.

As with many attorney disqualification/conflict of interest questions, the relevant facts arise in a context different from and collateral to the one giving rise to the alleged conflict. In that respect, this appeal is typical. The case on which this appeal is taken arises in connection with an August 2009 complaint filed by plaintiff O Builders & Associates, Inc. seeking payment for construction renovation and remodeling work performed in a restaurant owned by defendant Yuna Corp. of NJ, a/k/a "Baden Baden Restaurant." Defendant moved to disqualify plaintiff's counsel, Peter Y. Lee, Esq. (Attorney Lee) because, eighteen months earlier, the principal of defendant, Mrs. Kay Kang (formerly Park), had consulted with Attorney Lee. What follows are the facts relevant to defendant's disqualification motion, as developed before the Law Division.

On February 4, 2008,[2] at the request of a then-client, Dr. Dong Hyun Lee (Dr. Lee), Attorney Lee met with Mrs. Kang and Dr. Lee at Mrs. Kang's restaurant, the Baden Baden, in Palisades Park; since the death of Mrs. Kang's husband, Dr. Lee had acted as her unofficial business affairs advisor. According to Mrs. Kang, she consulted Attorney Lee "concerning pending litigation and business matters." She explained that "[t]here were several litigation matters left behind by my late husband, James Park, relating to two restaurants operating under the 'Baden Baden' trade name." She noted that one of the restaurants, located in Fort Lee, had closed in 2006, and that she met Attorney Lee at the remaining Palisades Park restaurant, in "one of the lower level party rooms." Her entire description of the substance of that consultation was scant: "At that time, we discussed extensively about my business history and the pending legal disputes. . . . We discussed various aspects of the Baden Baden business, including its history and its then-present state of affairs, confidentially."

Attorney Lee recalls that consultation differently. He states that "Mrs. Kang, Dr. Lee and [he] met at [Mrs. Kang's Palisades Park restaurant] to be introduced for the first time and discuss problems she was then having with present defense counsel, Michael S. Kimm, Esq., in connection with his handling of and representation in [a specific matter, titled the *Koryeo Corp.* case]." According to Attorney Lee, Mrs. Kang asked that he substitute for Kimm as her counsel in the *Koryeo Corp.* case, which was scheduled for trial in the Superior Court in one week. Attorney Lee "insisted that [he] could not make any decision until [he]

---

[2] Mrs. Kang initially claimed that this meeting occurred "[i]n approximately March 2007[,]" while Attorney Lee states that the meeting occurred on February 4, 2008. Attorney Lee's certification contains correspondence that corroborates February 4, 2008 as the date of his meeting with Mrs. Kang. When confronted with those proofs, Mrs. Kang later conceded that the consultation in fact occurred "in February 2008," eleven months after the date she originally certified. We have adopted Attorney Lee's date as the correct one.

reviewed the files and the [c]ourt adjourned the trial date for at least 30 days." He adamantly asserts that, at the February 4, 2008 meeting, "Mrs. Kang shared no privileged or confidential information with [him] concerning her or defendant's 'business history,' other 'pending legal disputes,' 'financial information' or 'then-present state of affairs[.]'" He reasons that the limitations on their discussions were "perhaps because all communications admittedly took place in the presence of our mutual friend and third-party, Dr. Lee, and the purpose of our meeting—my representation of M[r]s. Kang in the [*Koryeo Corp.* case]—did not require such information." After describing how and when he came to review the file in the *Koryeo Corp.* case, the very next day, on February 5, 2008, Attorney Lee wrote to Mrs. Kang and declined to represent her in the *Koryeo Corp.* case for three distinct reasons: (1) the trial was scheduled for February 11, 2008 and already had been adjourned twice, rendering a third adjournment unlikely; (2) although the lawsuit was more than a year old, no discovery—which he described as "essential in a litigant's timely and efficient preparation for trial"—had been conducted; and (3) there was a fundamental deficiency in the complaint, as all available causes of action had not been pled. As part of his response to Mrs. Kang's assertions, Attorney Lee also produced documents that corroborated his representations.

In response, Mrs. Kang certified generally that "[a]t [the February 4, 2008] consultation, we discussed extensively my business history and several pending legal disputes for approximately three hours." She asserted that she "disclosed business, financial and legal information related to Yuna [C]orp. and other matters to [Attorney Lee] and [that she] believe[d] to be related to the current law suit brought by O Builders, including discussion of [two then-pending cases, including the *Koryeo Corp.* case] and other general information about the circumstances of [her] business and legal affairs." She insisted that "[i]t remains [her] belief that the current suit will implicate portions of the information

discussed with [Attorney Lee] previously when he was consulted for legal representation."

Dr. Lee also weighed in on Mrs. Kang's behalf. In his certification, he confirmed that, since the death of Mrs. Kang's husband, he had "served as advisor to [Mrs.] Kang on legal and business affairs, including several litigation cases related to her businesses and personal life." According to Dr. Lee, he "arranged and attended a consultation between [Mrs.] Kang and [Attorney] Lee around February, 2008, to arrange for [Attorney] Lee to represent [Mrs.] Kang and her business." He explained that "[w]e met in a basement karaoke room at the Baden Baden Restaurant in Palisades Park, owned by M[r]s. Kang, and discussed [Mrs.] Kang's business, pending legal disputes, finances, and other confidential matters for several hours." Other than relating those general topics, his certification contains no specifics as to what was said or discussed.

In short, although Attorney Lee, Mrs. Kang and Dr. Lee all agree that they met and discussed whether Attorney Lee would assume the representation on behalf of Mrs. Kang in the *Koryeo Corp.* lawsuit—a representation Attorney Lee declined the very next day—Attorney Lee denies anything further of substance was discussed, while Mrs. Kang and Dr. Lee claim that matters concerning Mrs. Kang's "business, pending legal disputes, finances, and other confidential matters" were discussed, albeit without providing any details, specificity or corroboration thereof.

After considering the submissions of the parties and hearing argument, the trial court denied defendant's motion to disqualify Attorney Lee. It summarily concluded that, upon review of defendant's application, it did "not find that there was any confidential information that was actually shared with counsel and no attorney/client representation or relationship existed between the movant and the attorney[.]" In its written order memorializing that decision, the trial court repeated that reasoning and conclusion, stating that "[d]efendant's motion to disqualify [Attorney Lee] is denied as the court does not find a conflict of interest or sufficient

evidence of confidential information to disqualify [Attorney Lee] as attorney for [p]laintiff."

After defendant sought and was granted leave to appeal from that interlocutory order, the Appellate Division, in an unpublished, per curiam decision, affirmed the denial of defendant's motion to disqualify plaintiff's counsel. Noting that "[m]otions for disqualification should ordinarily be decided on the certifications and documentary evidence[,]" (citing *Dewey v. R.J. Reynolds Tobacco Co.*, 109 *N.J.* 201, 222, 536 *A.*2d 243 (1988)), the panel stated that "[d]isqualification is only required if the two matters are substantially related." (citing *City of Atl. City v. Trupos*, 201 *N.J.* 447, 467, 992 *A.*2d 762 (2010)). It reasoned that, "[i]n this case, the two matters are completely unrelated[, as n]one of the suits pending when [Mrs.] Kang met with [Attorney] Lee had anything to do with the instant dispute." Taking issue with the paucity of proofs offered by defendant, it observed that "[a]lthough [Mrs.] Kang asserts that the discussion included 'the then-present affairs' of the 'Baden–Baden business,' she does not claim that those 'then-present affairs' had anything to do with the present dispute." The panel also highlighted that "[n]or does she explain how the allegedly confidential information could be used against her or her company in the instant litigation[,]" and that "her concerns about some advantage accruing to [Attorney] Lee with respect to collecting a judgment are stated in the vaguest of terms." It concluded that defendant "has not demonstrated that facts relevant to the prior representation are both 'relevant and material' to the instant case." The panel emphasized that "[d]efendant had the burden of persuasion to prove that disqualification was justified[,]" and that defendant's "vague assertions of possible prejudice utterly fail to show that disqualification was justified in this case." (citation omitted).

■ Although the judgment of the Appellate Division clearly was entered in an interlocutory appeal by leave granted, defendant filed a petition for certification before this Court; that petition was granted. *O Builders & Assocs., Inc. v. Yuna Corp. of*

*NJ*, 204 *N.J.* 41, 6 *A.*3d 444 (2010).[3] For the reasons that follow, we too affirm the denial of defendant's motion to disqualify plaintiff's counsel.

## II.

Defendant principally asserts that the Appellate Division erred when it affirmed the order denying defendant's application to disqualify Attorney Lee, particularly "when the facts showed a very real possibility of an exchange of confidential information that could be significantly harmful to" defendant. Focusing on the claimed three-hour length of the consultation and the assertion that defendant "is a small mom and pop restaurant," defendant states in the negative that "it is inconceivable that confidential information for this small establishment was not shared that could be material to the subsequent matter." Arguing that plaintiff's interests "are materially adverse to those of the defendant in this action[,]" defendant concludes that "the analysis is confined to whether [Attorney Lee] learned *any* information during the con-

---

[3] Defendant's petition for certification, and our grant thereof, was procedurally in error. The governing rule is that "[w]here the judgment of the Appellate Division is entered in an appeal taken by leave granted, the appropriate method of seeking review by the Supreme Court is not by petition for certification but by motion for leave to appeal. *See R.* 2:2–5[.]" Pressler & Verniero, *Current N.J. Court Rules*, Comment to *R.* 2:12–3 (2011). As clearly set forth in *Rule* 2:2–5(a), "[a] judgment of the Appellate Division on an appeal to it from an interlocutory order, decision or action shall be deemed to be interlocutory and not reviewable by the Supreme Court as a final judgment, unless the judgment of the Appellate Division is dispositive of the action." In this case, the judgment of the Appellate Division on defendant's interlocutory appeal did not dispose of the underlying construction services claim; the appeal remained interlocutory. Consequently, defendant's use of the procedural vehicle of a petition for certification, and this Court's grant thereof, were in error. The error is readily corrected: "because defendant sought review of an interlocutory judgment and on our own motion, we vacate[ ] the grant of certification and, treating defendant's petition for certification as an application for leave to appeal, grant[ ] defendant leave to appeal the interlocutory disposition of the Appellate Division." *Shah v. Shah*, 184 *N.J.* 125, 132–33, 875 *A.*2d 931 (2005) (citation omitted).

sultation that could be significantly harmful to" defendant. (emphasis in original).

In response, plaintiff states that the Appellate Division correctly "found that disqualification is not warranted where [defendant]'s stated reasons therefor are stated in the 'vaguest of terms' and supported by 'vague' assertions of 'possible prejudice' arising from undisclosed 'confidential' information allegedly shared with [Attorney Lee] in the wee hours of February 4, 2008, at a karaoke bar." In direct opposition to defendant's request for relief, plaintiff urges that defendant "essentially asks this Court to believe it has somehow been 'wronged' by virtue of speculative circumstances— never raised below—arising from its self-proclaimed status as a 'small business,' or 'little guy' having 'no protective layers to guard against [the unauthorized disclosure of] sensitive information.' " In large measure, plaintiff faults defendant's application for disqualification of Attorney Lee as "vague" and lacking in any meaningful detail, noting that "to this day, [defendant] has yet to explain exactly what 'confidential' information is in the possession of [Attorney Lee] that 'could' or would harm and prejudice [defendant] in the instant litigation."

### III.

#### A.

The parties agree that neither defendant nor its principal, Mrs. Kang, retained Attorney Lee in February 2008. As a result, and despite any argument to the contrary by the parties, neither *RPC* 1.7 (addressing conflicts of interest involving current clients) nor *RPC* 1.9 (addressing conflicts of interest involving former clients) are implicated directly in this appeal. The distinct question presented in this appeal—whether Attorney Lee is to be disqualified in this case—is governed by *RPC* 1.18. It is that *Rule of Professional Conduct* that is deserving of our focus.

We start on familiar ground. "This Court's authority to regulate the legal profession is of constitutional dimension. *N.J.*

*Const.* art. VI, § 2, ¶ 3, cl. 2 (providing that 'Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted')." *In re Supreme Court Advisory Comm. on Prof'l Ethics Op. No. 697,* 188 *N.J.* 549, 554, 911 *A.2d* 51 (2006) (citations omitted). We earlier have observed that, in the exercise of that "jurisdiction, in 1984, this Court adopted the *Rules of Professional Conduct* in an effort to harmonize New Jersey's standards with the Model Rules of Professional Conduct of the American Bar Association (ABA) and to provide clear, enforceable standards of behavior for lawyers." *Ibid.* (citations, internal quotation marks and editing marks omitted). Then, " 'in 2001, the Supreme Court created a Commission to review New Jersey's *R.P.C.s* in light of the changes to the Model Rules made by the ABA's 'Ethics 2000' Commission.' " [4] *Ibid.* (quoting Michels, *supra,* at 4 (2006 ed.) [5]). At that point, " 'New Jersey's Commission, chaired by retired Justice Stewart Pollock and known as the Pollock Commission, responded in 2002 with suggested revisions to New Jersey's *RPCs* ' " and that, " '[a]fter a comment period and a public hearing, the Supreme Court adopted extensive amendments to the *RPCs* and the Court Rules in November of 2003, to be effective on January 1, 2004.' " *Ibid.* (quoting Michels, *supra,* at 4 (2006 ed.)).

*RPC* 1.18 was a new *Rule* adopted at the recommendation of the Pollock Commission. *See* Supreme Court of New Jersey, "Administrative Determinations in Response to the Report and Recommendations of the Supreme Court Commission on the Rules of Professional Conduct," Commission Comment to *RPC* 1.18 (Sept.

---

[4] "The Ethics 2000 Commission was formed in 1997 to review the Model Rules of Professional Conduct. It submitted a report to the House of Delegates at the August 2001 Annual Meeting. The report was debated at the August 2001 Annual and February 2002 Midyear Meetings. The changes to the Model Rules as amended during the debate were final at the end of the February 2002 Midyear Meeting." *ABA Ethics 2000 Commission, available at* http://www.americanbar.org/groups/professional_responsibility/policy/ethics_2000_commission.html.

[5] The 2011 updated reference to that quote is Michels, *supra,* § 1:2–1 at 5.

10, 2003) (noting that "[t]he ABA Commission has proposed a new rule to address a lawyer's ethical obligations to a prospective client. Our Commission's version of [ABA Model Rule of Professional Conduct] 1.18 addresses the same obligations in clearer language."), *reprinted in* Michels, *supra*, Appendix A1 at 1202. As initially adopted and currently in force, *RPC* 1.18 provides in full that:

> (a) A lawyer who has had discussions in consultation with a prospective client shall not use or reveal information acquired in the consultation, even when no client-lawyer relationship ensues, except as *RPC* 1.9 would permit in respect of information of a former client.
>
> (b) A lawyer subject to paragraph (a) shall not represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (c).
>
> (c) If a lawyer is disqualified from representation under (b), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except that representation is permissible if (1) both the affected client and the former prospective client have given informed consent, confirmed in writing, or (2) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom and written notice is promptly given to the former prospective client.
>
> (d) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client," and if no client-lawyer relationship is formed, is a "former prospective client."

In the main, *RPC* 1.18 "prohibits a lawyer who has had discussions with a prospective client from revealing any information acquired during the consultation, even if no attorney-client relationship results, except to the extent *RPC* 1.9 would permit the lawyer to reveal information acquired from a former client." Michels, *supra*, § 21:2–3 at 512. Also, "*RPC* 1.18(b) precludes any representation of a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the information acquired from the former prospective client could be significantly harmful to that person in the matter." *Id.* at 512–13. Further, "[t]he rule also provides for consent and screening as potential cures for a conflict under *RPC* 1.18(b)." *Id.* at 513. Its practical purpose is clear: "it protects parties who have disclosed information to counsel during a preliminary discussion, without requiring a court to strain to find that

the preliminary discussion created a representation." *Id.* § 13:6 at 262.

The need for the protective measures embodied in *RPC* 1.18 had become apparent, in part due to increasingly available anecdotal evidence of abuse.[6] That is why the ABA's Model Rule 1.18 and New Jersey's version thereof both require disqualification when a lawyer seeks to "represent a client with interests materially adverse to those of a former prospective client in the same or a substantially related matter if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter[.]" *Compare ABA Model Rule of Professional Conduct* 1.18(c) *and* Comment 6 on *Rule 1.18: Duties to Prospective Client,*[7] *with RPC* 1.18(b).

Those concerns also have generated interest in the legal academy. Recognizing that "[p]rospective clients are like clients in that

---

[6] By the time *RPC* 1.18 was adopted, the complaint that clients—either on their own or counseled by other lawyers—were consulting lawyers solely for the purpose of later disqualifying them had acquired a fair measure of credibility. The matter reached a head as the result of an inquiry to the Advisory Committee on Professional Ethics, which stated the question presented as addressing "a practice under which a client was advised to contact other lawyers for representation essentially on a pretextual basis, in order to disqualify those lawyers from representation of an adversary." *Advisory Comm. on Prof'l Ethics Op. No. 703,* 184 *N.J.L.J.* 315 (Apr. 24, 2006). The Committee concluded that "any such advice by a lawyer to a client plainly would constitute prohibited 'conduct prejudicial to the administration of justice' under *RPC* 8.4(d), in that it would impede a litigant's effective access to counsel of choice, and should cease immediately." *Ibid.; see also* Michels, *supra,* § 21:2–3 at 515 (noting that "attorney may not advise an existing or potential client to employ the 'preliminary consultation' rule as a weapon"); *Restatement (Third) of the Law Governing Lawyers,* Comment c to § 15 ("In deciding whether to exercise discretion to require disqualification, a tribunal may consider whether the prospective client disclosed confidential information to the lawyer for the purpose of preventing the lawyer or the lawyer's firm from representing an adverse party rather than in a good-faith endeavor to determine whether to retain the lawyer.").

[7] *Available at* http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_18_duties_of_prospective_client.html.

they often disclose confidential information to a lawyer, place documents or other property in the lawyer's custody, and rely on the lawyer's advice[,]" the American Law Institute (ALI) has noted that, given the limitations inherent in consultations, "prospective clients should receive some but not all of the protection afforded clients[.]" *Restatement (Third) of the Law Governing Lawyers*, Comment b to § 15.[8] *See, e.g., Steele v. Allen*, 226 *P.*3d 1120, 1123–24 (Colo.Ct.App.2009) (discussing, with approval, Section 15 of Restatement and referencing *Colo. RPC* 1.18 as "imposing upon lawyers obligations of confidentiality and avoidance of conflicts of interest with respect to prospective clients"), *cert. granted, Allen v. Steele*, 2010 *WL* 1011037 (Colo.2010). The ALI has adopted Section 15(2) to the *Restatement*, which provides as follows:

> A lawyer [who has been consulted but no attorney-client relationship ensues] may not represent a client whose interests are materially adverse to those of a former prospective client in the same or a substantially related matter when the lawyer or another lawyer whose disqualification is imputed to the lawyer ... has received from the prospective client confidential information that could be significantly harmful to the prospective client in the matter, except that such a representation is permissible if:
>
> > (a) (i) any personally prohibited lawyer takes reasonable steps to avoid exposure to confidential information other than information appropriate to determine whether to represent the prospective client, and (ii) such lawyer is screened ...; or
> >
> > (b) both the affected client and the prospective client give informed consent to the representation[.]
>
> [*Restatement (Third) of the Law Governing Lawyers*, § 15(2).]

The *Restatement* specifically notes that "personal disqualification of a lawyer who deals with a prospective client occurs only when the subsequent matter presents the opportunity to use information obtained from the former prospective client that would be 'significantly harmful.'" *Id.* at Comment c to § 15. It explains that "when a consultation with a prospective client does not lead to a lawyer's retention[,] the lawyer is not always

---

[8] This Court's reliance on selected portions of "the ALI's work" has been previously noted, *see Seidman v. Clifton Sav. Bank, S.L.A.*, 205 *N.J.* 150, 175 n. 11, 14 *A.*3d 36 (2011), and need not be repeated here.

prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter." *Ibid.* It notes that "[a] prospective client's assurance of confidentiality . . . must yield to a reasonable degree to the need of the legal system and to the interests of the lawyer and of other clients," and that they "include the need of a lawyer to obtain information needed to determine whether the lawyer may properly accept the representation without undue risk of prohibitions *if* no representation ensues." *Ibid.*

### B.

■ The plain language of *RPC* 1.18 and its antecedents, both from the ABA as well as from the academy, compel a straightforward conclusion. That conclusion is that a lawyer who has been consulted by a former prospective client will be disqualified if and only if two factors exist in combination: the matter of the consultation and the matter then adverse must be "the same or substantially related," *and* the information the lawyer received during the consultation must be "significantly harmful" to the former prospective client in the now adverse matter.

■ That said, neither *RPC* 1.18, the ABA nor the ALI define the terms "same or substantially related" matters or "significantly harmful" information. For future guidance, we define those terms, respectively. In respect of the former, the question of whether matters are "substantially related" has been defined in a substantively analogous context as follows:

> [M]atters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.
>
> [*City of Atl. City, supra,* 201 *N.J.* at 451–52, 992 *A.*2d 762 (addressing disqualification pursuant to *RPC* 1. 9(a)).]

We find that definition appropriate for use in respect of the application of *RPC* 1.18 and, therefore, adopt it in that context also.

■ Moreover, in respect of the latter term, we conclude that, in order for information to be deemed "significantly harmful" within the context of *RPC* 1.18, disclosure of that information cannot be simply detrimental in general to the former prospective client, but the harm suffered must be prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is sought, a determination that is exquisitely fact-sensitive and -specific. *See, e.g., Sturdivant v. Sturdivant*, 367 *Ark.* 514, 241 *S.W.*3d 740, 742 (2006) (disqualifying, under Arkansas version of *RPC* 1.18, wife's lawyer in custody matter because husband had consulted with member of lawyer's firm and disclosed extensive confidential information directly at issue in custody case concerning "the children and his concerns about his former wife"); *Miness v. Ahuja*, 713 *F.Supp.*2d 161, 166 (E.D.N.Y.2010) (ordering evidentiary hearing on disqualification motion under New York version of *RPC* 1.18 due to "the divergence in the parties' description of the relevant events"); *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 *F.Supp.*2d 896, 899 (W.D.Mich.2009) (applying ABA Model Rule 1.18's "significantly harmful" standard despite Michigan's failure to adopt rule); *In re Modanlo*, 342 *B.R.* 230, 237 (D.Md.2006) (denying disqualification of creditor's counsel under Maryland's *RPC* 1.18 because movant "ha[d] not shown that any information shared with [counsel sought to be disqualified] qualifies as significantly harmful").

With those operative principles as our guide, we address the procedure by which the protections of *RPC* 1.18 may be invoked.

## C.

■ In a strikingly similar setting—the disqualification of counsel pursuant to *RPC* 1.9 based on confidential communications had with a former client—this Court recently addressed who should bear the burden of production and/or persuasion. *City of Atl. City, supra*, 201 *N.J.* at 462–63, 992 *A.*2d 762. Utilizing the nomenclature relevant to a former prospective client under *RPC* 1.18, those procedures are:

the initial burden of production—that the lawyer(s) for whom disqualification is sought formerly [consulted with] their present adverse party and that the present litigation is materially adverse to the former [prospective] client—must be borne by the party seeking disqualification. If that burden of production or of going-forward is met, the burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which he or they [consulted with] the former [prospective] client are not the same or substantially related to the controversy in which the disqualification motion is brought. That said, the burden of persuasion on all elements under *RPC* 1.[18] remains with the moving party, as it bears the burden of proving that disqualification is justified.

[*Ibid.* (citations, parentheticals and internal quotation marks omitted).]

*See also Restatement (Third) of the Law Governing Lawyers,* Comment c to § 15 ("When a tribunal is asked to disqualify a lawyer based on prior dealings with a former prospective client, that person bears the burden of persuading the tribunal that the lawyer received such information."). Given the substantial identity between disqualifications for disclosure of confidences of former clients under *RPC* 1.9 and those of former prospective clients under *RPC* 1.18, we adopt for disqualification questions under *RPC* 1.18 that modified analytical paradigm originally arising under *RPC* 1.9.

■ We likewise adopt, in the context of a *RPC* 1.18 disqualification motion, the procedure we traditionally have followed in respect of *RPC* 1.9/former client disqualification applications. That is, a motion for disqualification under *RPC* 1.18

should ordinarily be decided on the affidavits and documentary evidence submitted, and an evidentiary hearing should be held only when the court cannot with confidence decide the issue on the basis of the information contained in those papers, as, for instance, when despite that information there remain gaps that must be filled before a factfinder can with a sense of assurance render a determination, or when there looms a question of witness credibility.

[*Dewey, supra,* 109 *N.J.* at 222.]

In sum, then, disqualification of counsel based on a consultation with a former prospective client will occur only when the movant, generally well-grounded in the written record, satisfies its burden of proving that the matter of the consultation and the matter then adverse are "the same or substantially related" and, at the same time, that the information the lawyer received during the consulta-

tion is "significantly harmful" to the former prospective client in the now adverse matter.

We now apply those principles to this appeal.

## D.

All parties admit that there was a consultation between Attorney Lee and the principal of defendant, Mrs. Kang, in February 2008. They differ, however, in three fundamental respects: what was disclosed during that consultation; whether the disclosures were in respect of the same or substantially related matters as those at issue in this construction renovation lawsuit; and whether any such disclosure is significantly harmful to defendant in this case.

Our consideration of this appeal is significantly hobbled by the sparse record created by the parties below. We are not unmindful of the theoretical quandary defendant has asserted: that, in order to sustain its burden seeking disqualification, Mrs. Kang must disclose the very confidential information she claims not only deserves protection, but also triggers counsel's disqualification. In practice, however, we reject that notion as rationally inconsistent. Defendant asserts that the reason for disqualification is that Mrs. Kang already disclosed confidential information to Attorney Lee; therefore, those disclosures now, at least in respect of Attorney Lee, are—if defendant is to be believed—nothing more than repetition and, more importantly, *not* the initial disclosure of confidential information. In other words, defendant cannot have it both ways: Mrs. Kang cannot claim that she has disclosed confidential information to Attorney Lee yet refuse to make those disclosures to the court for fear of disclosing confidential information to Attorney Lee. Either the claimed confidential information has been disclosed or it has not; the logical tightrope defendant has sought to walk leaves any court with nothing of substance on which to base its decision.

■ To be sure, a movant seeking disqualification of opposing counsel always is presented with a Hobson's choice in respect of the disclosure of confidential information. In those instances where the disclosure of confidential information must be made so that the court can grapple fairly with the issues, the parties may protect the confidentiality of their information by, among other means, requesting that the record be subject to a protective order, *see R.* 3:13–3(f) (criminal); *R.* 4:10–3 (civil), and the movant may further request that the application be considered *in camera. See generally* Pressler & Verniero, *supra,* comments 2.2 and 2.3 to *R.* 1:2–1. Furthermore, in those instances, as the one presented in this appeal, where the lawyer whose disqualification is sought denies ever receiving the claimed confidential information, an appropriate screening device would be to engage substitute counsel to oppose the disqualification motion.

■ That failure of proof forecloses the relief sought by defendant. Defendant, as movant, was required to bear the burden of production and persuasion in the request to disqualify Attorney Lee. Yet, defendant's submissions vaguely claimed only that information "concerning pending litigation and business matters" had been disclosed to Attorney Lee during the February 2008 consultation. And, Mrs. Kang's bald and unsubstantiated assertions that she "disclosed business, financial and legal information related to Yuna [C]orp. and other matters to [Attorney Lee that she] believe[d] to be related to the current law suit brought by O Builders, including discussion of [two then-pending cases, including the *Koryeo Corp.* case] and other general information about the circumstances of [her] business and legal affairs" cannot suffice to satisfy defendant's burden. In stark contrast, Attorney Lee provided a detailed recitation of the matters discussed, accompanied by corroborating, contemporaneous documents, none of which were challenged by defendant. And, the fact that Attorney Lee's post-consultation services were limited exclusively to his consideration of whether he would assume the representation of Mrs. Kang in the *Koryeo Corp.* case—and those services terminat-

ed once Attorney Lee rejected that representation—belies Mrs. Kang's assertion that anything other than that case was discussed during their February 4, 2008 consultation.

In sum, defendant has not demonstrated that the matters disclosed during the February 2008 consultation were either the same or substantially related to the subject matter of the lawsuit. Furthermore, defendant has not shown that the information disclosed during that consultation was harmful—much less, significantly harmful—to defendant in this lawsuit. In those circumstances, defendant's motion to disqualify Attorney Lee rightly was denied.

 We add the following. When pressed, although defendant conceded that the disclosures made in the consultation may not be "substantially related" to the underlying lawsuit, defendant sporadically asserted that those disclosures may well become relevant should plaintiff succeed in the lawsuit, secure a judgment against defendant, and then seek to enforce that judgment. Given the inherently theoretical and speculative nature of those concerns, we reject them as illusory and premature. Moreover, defendant has been unable to demonstrate what of its claimed confidential information would be beyond the reach of either pre-trial discovery, *see* R. 4:10–2(a) (defining scope of discovery to "any matter, not privileged, which is relevant to the subject matter involved in the pending action"), or, more to defendant's immediate point, discovery in aid of execution of a judgment. *See R.* 4:24–3 (providing for "the further use of discovery proceedings, on motion and order of the court, after the entry of judgment"). In that setting, and because "[d]isqualification of counsel is a harsh discretionary remedy which must be used sparingly[,]" *Cavallaro v. Jamco Prop. Mgmt.*, 334 *N.J.Super.* 557, 572, 760 *A.*2d 353 (App.Div.2000) (citing *Dewey, supra*), defendant's application must be subject to careful scrutiny. Against that necessarily high standard, defendant's motion to disqualify counsel perforce must fail.

## IV.

The judgment of the Appellate Division is affirmed.

Judge STERN (temporarily assigned), dissenting.

The present motion should not have been determined on the papers because the certifications presented disputed issues of material fact as to whether defendant's principal provided confidential information to plaintiff's counsel during a three-hour preliminary consultation. Thus, an evidentiary hearing was required under *Dewey v. R.J. Reynolds Tobacco Co.,* 109 *N.J.* 201, 222, 536 *A.*2d 243 (1988). *See also City of Atl. City v. Trupos,* 201 *N.J.* 447, 463, 992 *A.*2d 762 (2010).

As the majority well develops, *RPC* 1.18, dealing with former prospective clients, is an expansion of *RPC* 1.9, dealing with former clients, but was intended to "protect prospective clients to a lesser extent than actual clients," *see* Kevin H. Michels, *New Jersey Attorney Ethics: The Law of New Jersey Lawyering* § 21:2–3 at 513 (2011). *RPC* 1:18 does so by adding an additional limitation: disqualification is required only "if the lawyer received information from the former prospective client that could be significantly harmful to that person in the matter." *RPC* 1.18(b). Thus, with respect to the other two factors under the governing test, that the current representation 1) be "materially adverse" to the interests of the former prospective client and 2) involve "the same or a substantially related matter," *ibid., Trupos* is controlling. Moreover, *Trupos, supra,* makes clear that "the moving party ... 'bears the burden of proving that disqualification is justified.'" 201 *N.J.* at 463, 992 *A.*2d 762 (citing *N.J. Div. of Youth & Family Servs. v. V.J.,* 386 *N.J.Super.* 71, 75, 898 *A.*2d 1059 (Ch.Div.2004)).

I have no quarrel with the majority's interpretation of *RPC* 1.18 or its holding with respect to the movant's burden. However, in my view, the issue before us is whether defendant made a sufficient showing to warrant an evidentiary hearing on its claim

of disqualification in light of the factual dispute. In her certification in support of the motion to disqualify, Ms. Kang stated:

> When I consulted with attorney Peter Lee, this was arranged by a mutual friend of ours, and we all met at the Baden Baden location at 329 Bergen Boulevard, Palisades Park, New Jersey, at one of the lower level party rooms. At that time, we discussed extensively about my business history and the pending legal disputes. We spoke [for] approximately three hours and it was my intention to retain attorney Peter Lee but, for events that were not clear to me, which transpired subsequently, it turned out that I did not retain his services.
>
> . . . .
>
> We discussed various aspects of the Baden Baden business, including its history and its then-present state of affairs, confidentially.
>
> The pending lawsuit, filed by Mr. Lee on behalf of his current client, O Builders & Associates, Inc., is a suit that seeks significant money damages relating to the construction of my Palisades Park restaurant, Yuna Corporation, and, therefore, it is my belief that it will implicate portions of the information discussed with Mr. Lee previously when he was consulted for legal representation. If this suit prevails, somehow, and my company is unable to pay the judgment, other information disclosed by me during the previous consultation may be impinged as well, such as financial information, and managerial information.

In response, attorney Lee certified:

> At the meeting, Ms. Kang requested me to substitute [for] Mr. Kimm as her attorney in the Former Action insofar as (1) the Court (Daniel P. Mecca, J.S.C.) reportedly had scheduled trial for the following Monday, February 11, 2008, and (2) for reasons not made known to me, Mr. Kimm reportedly had sought to withdraw from the Former Action and refused to represent Ms. Kang at trial. To the extent Ms. Kang did not have with her any files relating to the Former Action, I insisted that I could not make any decision until I reviewed the files and the Court adjourned the trial date for at least 30 days.
>
> At our meeting with Dr. Lee, Ms. Kang shared no privileged or confidential information with me concerning her or defendant's "business history," other "pending legal disputes," "financial information" or "then-present state of affairs," perhaps because all communications admittedly took place in the presence of our mutual friend and third-party, Dr. Lee, and the purpose of our meeting—my representation of Ms. Kang in the Former Action—did not require such information. I made no request for and did not receive any such information at any time before, during or after the meeting of February 4, 2008.

There is no dispute that Lee declined to assume representation of the "Koryeo" matter on February 5, 2008. However, Ms. Kang further certified:

> I disclosed business, financial and legal information related to Yuna [C]orp. and other matters to attorney Peter Lee that I believe to be related to the current law suit brought by O Builders, including discussion of a case called, *Gigs, Inc. v.*

*Kyung Hee Park, et al., Kay Park, et al. vs. Koryeo Corp., et al.,* and other general information about the circumstances of my business and legal affairs. Although attorney Peter Lee seems to deny knowledge of the Gigs case, we did discuss the circumstances, including various aspects of the Baden Baden business, owned by Yuna Corp.

It remains my belief that the current suit will implicate portions of the information discussed with attorney Peter Lee previously when he was consulted for legal representation.

## Defendant's position was supported by Dr. Lee who certified:

I arranged and attended a consultation between Kay Kang and Peter Lee around February, 2008, to arrange for Peter Lee to represent Kay Kang and her business. We met in a basement karaoke room at the Baden Baden Restaurant in Palisades Park, owned by Ms. Kang, and discussed Kay Kang's business, pending legal disputes, finances, and other confidential matters for several hours.

### The motion judge denied the motion to disqualify, stating:

The Court has a motion to disqualify plaintiff's counsel, Peter Lee, from this action. The Court reviewing it does not find that there was any confidential information that was actually shared with counsel and no attorney/client representation or relationship existed between the movant and the attorney and, as such, the motion is denied.

In light of the certifications, I respectfully disagree with the majority that this matter, although before us on de novo review, *see Trupos, supra,* 201 *N.J.* at 463, 992 *A.*2d 762, can be decided on the papers.

In *Dewey, supra,* we expressed a preference that motions be decided on the papers where possible, but we also recognized exceptions to that rule:

Such a motion should ordinarily be decided on the affidavits and documentary evidence submitted, and an evidentiary hearing should be held only when the court cannot with confidence decide the issue on the basis of the information contained in those papers, as, for instance, when despite that information there remain gaps that must be filled before a factfinder can with a sense of assurance render a determination, or when there looms a question of witness credibility.

[109 *N.J.* at 222, 536 *A.*2d 243.]

Here, the subjects discussed during the consultation were hotly contested. Ms. Kang certified that they "discussed extensively about [her] business history and the pending legal disputes." She alluded to her additional concern that "[i]f this suit prevails, somehow, and my company is unable to pay the judgment, other information disclosed by me during the previous consultation may

be impinged as well, such as financial information, and managerial information." Dr. Lee, who arranged and attended the meeting, also certified that they "discussed Kay Kang's business, pending legal disputes, finances, and other confidential information for several hours." In stark contrast, plaintiff's attorney Peter Lee certified that the topics discussed were limited to "problems [Ms. Kang] was then having with present defense counsel ... in connection with his handling of and representation in" the "Koreyo" matter and her request to have Lee substitute as her attorney in that action. Although plaintiff's attorney provided documentation supporting his contention that the "Koreyo" matter was indeed discussed during the meeting, Ms. Kang alleged that the scope of the meeting was much broader.

While acknowledging defendant's "theoretical quandary," which requires Ms. Kang to disclose the very confidential information she seeks to protect, the majority suggests that defendant has sought to walk a "logical tightrope" that leaves a court "with nothing of substance on which to base its decision." *Ante* at 128, 19 *A*.3d at 978. The type of quandary in which the defendant finds itself has long existed; however, the procedure to be used in this type of case needs to be updated following our rejection of the "appearance of impropriety" analysis, which previously allowed a court to avoid inquiry into an attorney's "actual acquisition of protected information." *See Dewey, supra,* 109 *N.J.* at 223, 536 *A*.2d 243.

As explained in *Trupos, supra,* 201 *N.J.* at 464, 992 *A*.2d 762, the "appearance of impropriety" analysis is no longer viable, and allegations supporting a motion for disqualification "must be based in fact." *Ibid.* Thus, while the movant must disclose specific facts and confidences to support the motion, the procedure should protect against unnecessarily broad disclosure to the opposing party. On the other hand, opposing counsel, who movant states is already aware of the confidences, should be involved in the proceedings subject to a protective order.

Thus, on remand, the trial judge should test the credibility of the witnesses and consider defendant's allegations that plaintiff's attorney received confidential information without conveying any specific confidences to plaintiff. As the majority notes,

> where a disclosure of confidential information must be made so that the court can grapple fairly with the issues, the parties may protect the confidentiality of their information by, among other means, requesting that the record be subject to a protective order, *see R.* 3:13–3(f) (criminal); *R.* 4:10–3 (civil), and the movant may further request that the application be considered *in camera*.
>
> [*Ante* at 129, 19 *A.*3d at 978.]

*See also ALK Assocs., Inc. v. Multimodal Applied Sys., Inc.,* 276 *N.J.Super.* 310, 316, 647 *A.*2d 1359 (1994) (finding, in trade secret context, that trial court may enter protective order limiting disclosure of confidential information to parties' attorneys and experts who must agree to make no further disclosure to their clients). In terms of potential prejudice to defendant, the trial court should also consider whether counsel has specific knowledge regarding defendant's financial ability to litigate and its attitude towards settlement. *See Reardon v. Marlayne,* 83 *N.J.* 460, 476, 416 *A.*2d 852 (1980) ("[N]o amount of discovery would be likely to uncover such useful information as the strengths and weaknesses of [a] corporate client's decision-makers or their attitude towards settlement.").

For the reasons expressed above, I respectfully dissent.

*For affirmance*—Chief Justice RABNER, Justices LaVECCHIA, RIVERA–SOTO and HOENS—4.

*For reversal*—Justices LONG and ALBIN and Judge STERN (temporarily assigned)—3.