**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1953-19T1

BRIAN DELANEY,

     Plaintiff-Respondent,

v.

DYKSTRA ASSOCIATES, INC.
d/b/a DYKSTRA ASSOCIATES,
PC, LMSD HOME BUILDERS
LLC, and GLEN EDWARDS,

     Defendants,

and

WANTAGE RIDGE
DEVELOPMENT, LLC, 43 MAIN
STREET, LLC and LIBERTY NEW
CONSTRUCTION PAINTING CO.
d/b/a LIBERTY PAINTING,

     Defendants-Appellants.

_____

Argued telephonically June 1, 2020 –
Decided July 9, 2020

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0955-19.

Bob Kasolas argued the cause for appellants Wantage Ridge Development, LLC, 43 Main Street, LLC and Liberty New Construction Painting Co. d/b/a Liberty Painting (Brach Eichler, LLC, attorneys; Bob Kasolas, on the briefs).

Anthony Bedwell argued the cause for respondent (Bedwell & Pyrich, LLC, attorneys; Anthony M. Bedwell and Alissa Pyrich, of counsel and on the brief).

PER CURIAM

On leave granted, defendants 43 Main Street LLC (43 Main), Wantage Ridge Development LLC, and Liberty New Construction Painting Co. (Liberty) (collectively, the "Prassas defendants") appeal the motion judge's order disqualifying Bob Kasolas, Esq. and Brach Eichler LLC as their counsel. While we agree with the judge that plaintiff Brian Delaney had a basis to seek the disqualification of Kasolas and Brach Eichler LLC, we reverse because we conclude Delaney waived his right to seek their disqualification.

I

This court is very familiar with the primary participants in the within dispute as a result of prior consolidated appeals arising from their fractured business relationship.  Delaney v. Dykstra, Nos. A-1115-16, A-3246-16, A-

2                                        A-1953-19T1

5523-17 (App. Div. Aug. 12, 2019).  A brief summary of the prior appeals are necessary to provide context for the present controversy before us.

In 2005, Delaney, together with Owen Dykstra, Doug Dykstra, and Dimitrios Prassas, formed CC Holdings, LLC (CCH) as its sole members for the purpose of developing a mixed-use property in Sparta.  In 2014, Prassas and the Dykstras decided to remove Delaney as a member of CCH and purchase ownership interest therein due to his alleged hostile and combative behavior towards them and his company's default on a loan from CCH.  This led to three separate lawsuits which were consolidated in the Chancery Division.

In April 2016, after a settlement agreement was reached in the consolidated matters, it was placed on the record before the trial court, and later memorialized in writing.  Delaney, however, refused to honor the agreement resulting in the parties' respective efforts to rescind or enforce the agreement. The court eventually entered five orders from October 2016 to July 2018, all in favor of the Dykstras, Prassas, and CCH, to uphold and enforce the settlement agreement and award them attorneys' fees and costs.  On appeal, we affirmed the court's orders in a thirty-three-page unpublished opinion.  Throughout the litigation, in the trial court and this court, Kasolas, a member of the law firm Brach Eichler, LLC, represented Prassas without any objection from Delaney.

A-1953-19T1

On April 29, 2019, about three months before our opinion was issued, Delaney filed the within complaint against defendants alleging conversion and bailee conversion. In particular, Delaney alleged that "[i]nstead of crediting [him] as having made capital contributions to CCH by way of making . . . payments . . . [defendants] either directly misappropriated or improperly transferred" those funds, intending "to permanently deprive [him] of the funds or otherwise use the funds for purposes other than that for which they were intended." Delaney sought compensatory damages, pre- and post-judgment interest, punitive damages, attorneys' fees and costs, and "imposition of a constructive trust and lien on the assets" of defendants regarding the bailee conversion count.

On June 18, Kasolas, representing the Prassas defendants, filed a motion to dismiss Delaney's complaint with prejudice based upon the contention the complaint made the same claims this court adjudicated in the aforementioned decision, Delaney, slip op. at 1-23.

On September 25, Delaney filed a motion to disqualify Kasolas and Brach Eichler from representing the Prassas defendants. In support, Delaney attached a certification and an abundance of documents to show that either Kasolas

A-1953-19T1

specifically, or the law firm of Brach Eichler generally, had represented him across various lawsuits over the past decade.

On November 1, after oral argument, the motion judge issued an order and bench decision disqualifying Kasolas and Brach Eichler as counsel for the Prassas defendants. The judge noted it was troubled by "the representation by . . . Kasolas and his firm of . . . Delaney, [which] goes back quite a few years[,]" and although there had been "a significant gap in time" following the prior litigation, and Delaney never moved for disqualification, "[t]he fact that he didn't move to disqualify earlier . . . is [in]sufficient for this court to . . . rule that . . . Delaney waived his right to make a disqualification motion, or that he is in some fashion estopped" from doing so.

Analyzing RPC 1.9(b), the court held Kasolas and Brach Eichler "were privy to confidential information from . . . Delaney" and that Kasolas "certainly has some insights into [Delaney's] personality, thinking, [and] how he approaches particular decisions whether it be in litigation, business, etc." Ultimately, the judge determined Kasolas and Brach Eichler should be disqualified because they represented Delaney regarding CCH matters during the events giving rise to Delaney's current suit.

A-1953-19T1

When Kasolas sought a stay, the judge disclosed his need to recuse himself from future proceedings in the matter. The judge commented:

> I don't know that a stay is appropriate for this court to grant or entertain. And I'll tell you further . . . in all candor up to this point, between yesterday and today, I did not know enough about this case for me to make the comments I'm going to make . . . . I didn't realize until I got into these other issues, and had an opportunity to have a perspective as to what the range of the issues . . . are, in this case with regard to some of the other defendants. The Dykstra Associates defendants, I've known members of the Dykstra family . . . professionally when I was in practice for many years. I had an appropriate professional relationship with them and, quite frankly, I have a very high regard for them, and I think it's probably something that's going to happen in the next day or so that I'm going to recuse myself from any further proceedings in this case, for that reason. It has nothing to do with the issue in this case for today, but going forward I believe in the interest of fairness to all parties that I recuse myself from further proceedings. I don't think I have to, but I think that it is probably the better course of action because I have . . . utilized their services when I was in practice for engineering services, surveying services, and the like, and I just don't think it's appropriate . . . for me to be ruling on the merits of the case going forward after today.

Twenty days later, the Prassas defendants filed a motion for leave to appeal the November 1 order, which this court granted.

Prior to our order granting leave to appeal, the motion judge issued a letter amplifying his bench decision. R. 2:5-6(c). The judge analyzed whether

6

Kasolas and Brach Eichler's representation of the Prassas defendants in this matter would violate the conflict of interest provisions outlined in RPC 1.7 because they were "substantially related[,]" under RPC 1.9 pursuant to City of Atl. City v. Trupos, 201 N.J. 447 (2010), to the prior matters in which Kasolas and Brach Eichler represented Delaney. The judge reasoned that under RPC 1.7, there was "no question" that their representation of the Prassas defendants would be adverse to Delaney.

Examining Delaney's documentary evidence, the judge found it "evident that there was communication between and representation by Kasolas/Brach Eichler and . . . [Delaney] in 2012 referencing [a] First Hope Bank loan closing," which gave Kasolas and Brach Eichler the opportunity to "access [Delaney's] personal financial information, including tax returns and financial statements." The judge determined "Kasolas and Brach Eichler, without question, also represented . . . Delaney personally and Windsor Lake Estates, LLC, [(WLE)] of which Delaney was the sole member, in several cases in litigation . . . in the years 2008 [and] 2009." The judge also found Kasolas and Brach Eichler represented Delaney regarding preparation of CCH's Operating Agreement in 2011 and in another case in Sussex County in 2013. In this matter, the judge maintained Kasolas and Brach Eichler as "[c]ounsel for the [Prassas]

A-1953-19T1

[d]efendants are directly opposing [Delaney's] interests, in regard to matters that were addressed during [Delaney's] and opposing counsel's professional relationship."

Further, citing Trupos, 201 N.J. at 444, the judge concluded the "facts relevant to the prior representation are both relevant and material to the subsequent representation."  Because of the "multi-year professional relationship" between Kasolas, Brach Eichler, and Delaney, the judge ruled "[t]here is a clear risk, indeed a probability, that but for disqualification, Delaney may be required to rebut or refute statements or advice allegedly made or communicated to him by Kasolas/Brach Eichler as to his rights, obligations, and remedies, especially as they relate to his involvement in CCH."  As such, the judge deemed such a situation "unseemly."

II

In their appeal, the Prassas defendants allege the motion judge erred by disqualifying Kasolas and Brach Eichler from representing them.  Specifically, they argue the judge "plainly failed to actually apply the Trupos elements" because: (1) he "erred in determining Brach Eichler ever . . . represented Delaney in anything pertaining to CCH"; (2) Brach Eichler's representation of Delaney in any other litigation was not "substantially related" to the instant

litigation; and (3) he failed to point out "what specific 'confidential information' Brach Eichler learned from Delaney that could be used materially or adversely against him in this matter."

The Prassas defendants also maintain that any representation of WLE by Brach Eichler cannot create a conflict between Brach Eichler and Delaney in his individual capacity because neither Kasolas nor Brach Eichler represented WLE with regard to its bankruptcy. The Prassas defendants contend the judge should have conducted an evidentiary hearing to make factual findings concerning the details of Kasolas and Brach Eichler's relationship with Delaney. The Prassas defendants further maintain the judge erred by not finding Delaney "waive[d] any purported conflict [Kasolas and] Brach Eichler has in representing [the] Prassas [d]efendants in this matter." In addition, they argue the judge should have recused himself prior to issuing a decision on the disqualification motion because he had a conflict based on a previous business relationship with the Dykstras.

## A.

Initially, we briefly address the Prassas defendant's contention the judge should have recused himself before considering whether to disqualify Kasolas and Brach Eichler. Specifically, they maintain because the judge admitted he

9

had a prior business relationship with the Dykstras, he erred by finding that "the disqualification motion 'had nothing to do' with the balance of the case or his conflict." We see no abuse of discretion. State v. Marshall, 148 N.J. 89, 275-76 (1997). Delaney's disqualification motion had nothing to do with the Dykstra defendants, with whom the judge was previously associated with in his legal practice before becoming a judge. The fact the judge ruled against the Prassas defendants, does not in itself, suggest the judge was biased in doing so as a result of his prior relationship with their co-defendants. And there are no facts intimating he was biased.

B.

We review a motion judge's decision on a disqualification motion de novo. Trupos, 201 N.J. at 463. Therefore, we need not defer to the judge's decision. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We must weigh "'the need to maintain the highest standards of the [legal] profession' against 'a client's right freely to choose his counsel.'" Dewey v. R. J. Reynolds Tobacco Co., 109 N.J. 201, 205 (1988) (alteration in original) (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)).

RPC 1:7 (a)(1) and (2) provide that an attorney shall not represent a client if "the representation of one client will be directly adverse to another client," or

"there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer."

RPC 1.9(a) prohibits "[a] lawyer who has represented a client in a matter [from] thereafter represent[ing] another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." Matters are substantially related if

> (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.
>
> [Trupos, 201 N.J. at 451-52.]

Thus, disqualification "is triggered when two factors coalesce: the matters between the present and former clients must be 'the same or . . . substantially related,' and the interests of the present and former clients must be 'materially adverse.'" Id. at 462 (alteration in original).

Disqualification motions are normally decided based on affidavits or other documentary evidence, unless the motion judge determines live testimony is

required because conflicting affidavits are presented, and witness credibility is at issue. Id. at 463 (citing Dewey, 109 N.J. at 222). The burden rests on the former client to prove he or she "previously had been represented by the attorney whose disqualification is sought," Dewey, 109 N.J. at 222, and the prohibition of RPC 1.9(a) applies, Trupos, 201 N.J. at 462. To demonstrate the lawyer came into possession of confidential information from the prior relationship, the former client must make more than "bald and unsubstantiated assertions" that he or she disclosed "business, financial and legal information" that the client believes might be related to the matter for which the disqualification of the attorney is sought. O Builders & Assocs., Inc. v. Yuna Corp. of N.J., 206 N.J. 109, 129 (2011). If there is prima facie proof of a possible ground for disqualification, the burden of producing countervailing evidence shifts to the lawyer and his or her present client. Trupos, 201 N.J. at 462-63.

Following these principles, we conclude the motion judge was correct in determining Kasolas and Brach Eichler's prior representation of Delaney in various matters is materially adverse to Delaney's interests in the within litigation. Our review of the record leads us to the same conclusion reached by the judge that Kasolas and Brach Eichler's previous representation dealt with facts that are relevant and material to Delaney's allegations herein.

Kasolas and Brach Eichler's attorney-client relationships have intertwined with the parties to this matter and the prior matters in transactional and litigation matters. For example, Kasolas and Brach Eichler, represented Delaney and Prassas in 2011 regarding the appraisal of CCH's property. Further, Brach Eichler worked on Delaney's behalf with respect to CCH's Restated Operating Agreement by contacting Faith Hope Bank regarding loan guarantees.[1]

As the judge properly found, Kasolas and Brach Eichler, through their representation of Delaney over the years, have been privy to issues which bear on the instant litigation. Delaney claims defendants misappropriated funds that he, through WLE, issued to CCH purportedly as capital contributions. Kasolas and Brach Eichler have been involved with Delaney since the inception of his involvement with CCH and the initiation of CCH's development project, which is the focus of this matter. As such, the issues on which Kasolas and Brach Eichler represented Delaney in the past are relevant and material here, and the court properly applied RPC 1.9 and the Trupos standard in considering whether they should be disqualified in representing the Prassas defendants.

---

[1] Contrary to the Prassas defendants' argument, the judge did consider the gap of time between Kasolas and Brach Eichler's representation of Delaney and this litigation. He noted in his bench decision, "[t]here may have been a significant gap in time" between the previous representation by Kasolas and Brach Eichler, but nevertheless determined that disqualification was proper.

A-1953-19T1

C.

Even though we agree that a disqualifying conflict existed as a result of Kasolas and Brach Eichler's prior representation of Delaney in various matters, we conclude the judge erred in finding Delaney did not waive his right to seek their disqualification.

In Dewey, the Supreme Court "conclude[d] that under RPC 1.9 a mandatory disqualification is no longer required." 109 N.J. at 215. And in Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 609 (App. Div. 1990), we held the trial court had not abused its discretion when denying a motion to disqualify opposing counsel, because the movant had "unduly delayed raising the issue until shortly before the retrial, even though it was aware of the facts relevant to the alleged conflict for several years." Beyond these rulings, there is a dearth of authority in our state courts on whether a party can waive a motion to disqualify an opposing party's legal representation. Thus, we look to our federal brethren, where we find meaningful guidance.

In Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1115 (D.N.J. 1993), writ of mandamus granted, 10 F.3d 155 (3d Cir. 1993), the federal district court declared that "[w]aiver is a valid basis for the denial of a motion to disqualify." There, the court held a motion seeking disqualification, filed three

years after commencement of the litigation and under circumstances in which facts regarding the conflict had been known from the outset, was untimely. Id. at 1120. The court stated:

> [A] finding [of waiver] is justified . . . when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had the opportunity. In [this] circumstance, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk.
>
> [Id. at 1115 (alterations in original) (quoting Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1208 (E.D. Pa. 1992)).]

The court set forth five factors relevant to a determination whether the moving party seeking disqualification of an opponent's counsel had waived the right to that relief: "(1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred, and (5) whether disqualification would result in prejudice to the non-moving party." Ibid. Particularly important was whether the movant appeared to be using the motion as a technical maneuver. Ibid. (citing Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 436 (1985) (expressing a concern for the "tactical use of disqualification motions to harass opposing counsel")).

15

We conclude application of the Alexander test to this matter establishes that Delaney waived his right to disqualify Kasolas and Brach Eichler from representing the Prassas defendants.  Delaney has been constantly involved in litigation in various forms against Prassas, the Dykstras, and their related business entities regarding essentially the same dispute, and never before moved to disqualify Kasolas and Brach Eichler.  From all accounts, Delaney is a sophisticated developer who was vigorously represented by competent counsel at all stages of the prior litigation.  In this litigation, it is arguable that Delaney continues to rebuff compliance with the settlement agreement between himself and CCH's principals we previously upheld, and now belatedly attempts to separate the Prassas defendants from the legal counsel they retained throughout that litigation and others, in which Delaney was an adversarial party.  To disqualify Kasolas and Brach at this stage would prejudice the Prassas defendants – strategically and financially[2] – as they have relied upon their counsel throughout their various legal skirmishes with Delaney, without his objection.

---

[2] New counsel for the Prassas defendants would have to invest significant time in learning the extensive history between the parties.

A-1953-19T1

Considering the extensive prior litigation between the parties in which Kasolas and Brach Eichler represented Delaney's adversaries as well as Delaney's possession of supporting documentation he now uses as a sword to disqualify Kasolas and Brach Eichler, we cannot reasonably find Delaney was unaware there were grounds to disqualify Kasolas and Brach Eichler prior to his motion. Delaney proffers no reasonable explanation for his motion's delay. We find no merit to his contention that his failure to previously pursue disqualification should not be considered in determining if he waived his right to seek disqualification now. We thus are left with the belief his motion was clearly filed for disfavored "tactical reasons." Therefore, we reverse the judge's order granting Delaney's motion for disqualification.

Any arguments that we have not addressed is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1953-19T1